UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JACK A. CLAYBORNE,

                        Plaintiff,

        v.                                          Case No. 22-cv-145-pp

NURSE ZERBST, DOCTOR BROWN,
HEALTH SERVICES ADMINISTRATOR JAMES MATTHEWS,
WELLPATH MEDICAL PROVIDER, CAPTAIN GABOR,
DEPUTY JAIL ADMINISTRATOR LEWANDOWSKI,
and JAIL ADMINISTRATOR WOLLENHAUPT

                        Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 3), DENYING AS MOOT MOTION FOR EXTENSION OF TIME TO PAY INITIAL PARTIAL FILING FEE (DKT. NO. 13) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

---

Jack A. Clayborne, who is incarcerated at U.S. Penitentiary McCreary in Pine Knot, Kentucky and who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants failed to provide adequate medical treatment for his shoulder injury and pain while he was detained at the Waukesha County Jail. This decision resolves the plaintiff's motions for leave to proceed without prepaying the filing fee, dkt. no. 3, and for an extension of time to pay the initial partial filing fee, dkt. no. 13, and screens his complaint, dkt. no. 1.

I.      **Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 3)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h).

1

The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the incarcerated person must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On April 6, 2022, the court ordered the plaintiff to pay an initial partial filing fee of $18.47. Dkt. No. 10. The court granted the plaintiff's first request (Dkt. No. 11) to extend that deadline. Dkt. No. 12. The plaintiff requested a second extension of time to pay the initial partial filing fee. Dkt. No. 13. On June 13, 2022, however, the court received the initial partial filing fee. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order. The court will deny as moot the plaintiff's second motion for an extension of time.

## II.     Screening the Complaint

### A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.    The Plaintiff's Allegations

At the time he filed the complaint, the plaintiff was incarcerated at Waukesha County Jail. Dkt. No. 1 at 2, 22. The complaint names as defendants Nurse Zerbst and Doctor Brown, both of whom allegedly worked at the jail and for Wellpath Medical Provider (also named as a defendant). Id. at 1–2. The complaint also names Waukesha County Jail Health Services Administrator James Matthews, Captain Gabor, Deputy Jail Administrator Lewandowksi and Jail Administrator Wollenhaupt. Id. The plaintiff has sued all defendants in their official and individual capacities. Id. at 19.

The complaint alleges that sometime in 2018, the plaintiff was injured "during a beating/excessive use of force [he] received from HIDTA officers." Id. at 2.[1] The plaintiff says he was taken to a hospital for an evaluation and x-ray. Id. Officials then transferred the plaintiff to Milwaukee County Jail, where he saw medical personnel about his injuries. Id. at 2. Unspecified medical staff prescribed him medicine for head, neck, shoulder and back pain. Id. at 2–3. They also x-rayed the plaintiff's shoulder a second time and prescribed physical therapy for a possible tendon or muscle injury. Id. at 3.

In September 2019, after completing only two therapy sessions, the plaintiff was transferred to Dodge County Detention Facility. Id. There, the plaintiff explained to Doctor Godiwalla (not a defendant) and unspecified medical staff that at Milwaukee County Jail, he had been taking pain

_____

[1] The complaint does not say what "HIDTA" stands for. It is possible the plaintiff is referring to the Drug Enforcement Administration's "High Intensity Drug Trafficking Areas" program. See https://www.dea.gov/operations/hidta.

medication and receiving therapy for his shoulder. Id. Godiwalla prescribed the plaintiff ibuprofen but no therapy. Id. at 3–4. The plaintiff later explained to Godiwalla that the ibuprofen was not "fixing the problems" with his shoulder and that he still was in pain. Id. at 4. The plaintiff was switched to an arthritis medication and told "to try for about 6-months." Id. The plaintiff alleges that he followed those instructions, but that the medication did not work. Id.

On March 9, 2021, the plaintiff told Nurse Practitioner Debra Knisbeck (not a defendant) that his medication was not addressing whatever was wrong with his shoulder or the resulting pain. Id. The plaintiff again was given ibuprofen and told "that there was nothing to be done." Id. On June 9, 2021, the plaintiff saw Doctor Christina Ann Stetcher Boryczka (not a defendant). Id. at 4, 6. She told the plaintiff "that there was nothing to be done except doing the same things [he'd] been trying, like taking the Medication, stretching, rotating exercises etc., etc." Id. at 6. The plaintiff says that he explained to Stretcher Boryczka repeatedly that those treatments were not fixing whatever was wrong with his shoulder and that he still was in pain. Id. The plaintiff alleges that he filed an inmate grievance about his medical treatment, but that Sgt. J. Polsin, Hundt, Jail Administrator Brugger and Sgt. Kuehl—none of whom are defendants—"all supported and endorsed the Deliberate Indifference and acts committed by Doctor Godiwalla, Debra Knisbeck and Christina Ann Stetcher Boryczka."[2] Id.

_____

[2] The above allegations are nearly identical to those the plaintiff made in another complaint that he filed in this court. See Clayborne v. Godiwalla, et al., Case No. 22-cv-95, Dkt. No. 1 at 2–7. The court has addressed the plaintiff's

On September 22, 2021, the plaintiff was transferred to the Waukesha County Jail. Id. at 8. On October 1, 2021, he told Nurse Zerbst "of the History of [his] shoulder problems;" on October 12, 2021, he saw Zerbst and Doctor Brown and recounted the issues again. Id. He alleges that Zerbst and Brown "have done nothing except advise [him] to take Tylenol twice a day (later added Ibuprofen), and to do rotating exercises, and stretching exercises." Id. The plaintiff told Zerbst and Brown that he had been trying those things at Dodge County Detention Center and that the pain medication was neither taking the pain away nor addressing whatever was wrong with his shoulder. Id. He said that he needed someone with experience to look at his shoulder, but Brown merely told him to perform the same exercises and take the prescribed medication. Id. at 10. The plaintiff says he "exhausted available remedies," but says that Lewandowski (on October 18, 2021) and Wollenhaupt (on October 27, 2021) "both support and endorse the Deliberate Indifference and Acts committed by Nurse Zerbst and Doctor Brown, And the Health Services Administrator James Matthews." Id.

The plaintiff alleges that around the end of November or early December 2021, he was taken off his pain medication. Id. at 13. He says he wrote to medical staff two or three times asking for stronger medication, but that he received no response. Id. The plaintiff believes that he was denied pain medication "on purpose and in retaliation for [his] participation in the

---

claims against defendants Godiwalla, Stetcher Boryczka, Knisbeck and others not named in this complaint in the screening order in Case No. 22-cv-95.

grievance process." Id. After two weeks without pain medication, the plaintiff filed grievances. Id. Lewandowski and Captain Gabor responded to his grievances but denied that he had ever requested medication from medical staff. Id.

The plaintiff says he believes his shoulder is dislocated because it "constantly pops/cracks all the way from [his] right shoulder to [his] left shoulder (possibly [his] collarbone)." Id. at 15. The plaintiff says the shoulder "hurts and feels as though it's popping in and out of place all day for no reason." Id. He says he has tried resting, stretching, rotating and "working" his shoulder, but that nothing has corrected whatever is wrong or alleviated the pain. Id. at 15–16. He maintains that though he was seen by Zerbst and Brown, "no matter how much [he] pleaded the problems and pain [he] ha[d] from [his] shoulder and for someone that's experienced in this Area of the Body to look at [his] Shoulder," they "stated the same." Id. at 16. He asserts that Zerbst and Brown have committed medical malpractice and been deliberately indifferent to his shoulder issues. Id. He also asserts that Matthews and Wellpath Medical provider have been deliberately indifferent to his shoulder issues. Id. at 16–17.

The plaintiff alleges that on October 18, 2021, he told Zerbst and Brown that his skin was "excessively dry" and "was changing colors." Id. at 10. They told him "that there was nothing that they could give [him] or do" because "they don't treat dry skin." Id. at 10, 12. The plaintiff says he exhausted his remedies, and that Lewandowski and Wollenhaupt both "support and endorse

the Deliberate Indifference/Negligent acts committed by Nurse Zerbst and Doctor Brown, And the Health Services Administrator James Matthews." Id. at 12.

The plaintiff alleges that on October 29, 2021, the jail charged him $10 for over-the-counter medications. Id. He says that he exhausted his remedies' but that both Lewandowski and Wollenhaupt "Support and Endorse the acts committed by the Health Services Administrator James Matthews." Id. at 12–13.

The plaintiff alleges that Waukesha County Jail "has a written policy that says they will charge Federal Inmates $25.00 for Medical and Mental Health Co-pay." Id. at 13, 15. He says this is an "excessive" copay, and that Dodge County Detention Facility charged only $2.50 for medical copays and nothing for mental health services. Id. at 15.

The plaintiff seeks unspecified declaratory relief, a temporary restraining order and "a temporary or permanent injunction." Id. at 18. He seeks injunctive relief ordering Zerbst, Brown and Matthews to stop being deliberately indifferent to his medical needs, to have an expert in the relevant area of the body look at and diagnose his shoulder problems and to give him something for his excessively dry skin. Id. He also wants the Health Services Administration, "John Does/Jane Does, the DJA/JA A. Wollenhaupt" to change the policy requiring federal inmates to pay a $10 copay for medications and a $25 copay for medical and mental health services. Id. at 18-19. He wants Health Services Administrator James Matthews, "John Does/Jane Does, DJA Lewandowski,

Captain Gabor" to stop taking him off pain medication or allowing him to be taken off pain medication and to "stop supporting and endorsing such actions." Id. at 18–19. The plaintiff says he is suing for physical, mental, emotional and psychological damages. Id. at 19-20. He seeks $250,000 in damages. Id. at 19–20.

    C.    <u>Analysis</u>

        1.    *Official Capacity*

Claims against an official in his official capacity represent another way to plead a claim against the entity that the official represents or for which the official works. <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985) (citing <u>Monell v. New York City Dep't of Soc. Servs.</u>, 436 U.S. 658, 690, n.55 (1978)). The plaintiff alleges that the defendants work for either Wellpath or the Waukesha County Jail. Although in some circumstances, a business like Wellpath may be found liable under §1983, a jail—like Waukesha County Jail—cannot. <u>See Smith v. Knox Cty. Jail</u>, 666 F.3d 1037, 1040 (7th Cir. 2012). But a county or municipality, like Waukesha County, may be a proper party under §1983. The court will construe the plaintiff's claims against the defendants in their official capacities as claims against either Wellpath or Waukesha County.

The plaintiff does not explain who "Wellpath Medical provider" is, although he does say that it is "the same Medical provider for both Dodge County Detention Facility . . . and Waukesha County Jail." Dkt. No. 1 at 17. The court assumes the plaintiff is referring to a private corporation that provides health care services to individuals in correctional facilities. <u>See</u>

https://wellpathcare.com/about/. "Under *Monell v. Department of Social Services,* local governments—and private corporations acting under color of state law—are liable for constitutional torts arising from their policies and customs." Stockton v. Milwaukee County, 44 F.4th 605, 616 (7th Cir. 2022) (citing Monell, 436 U.S. 658, 690 (1978); Shields v. Ill. Dep't of Corr., 746 F.3d 782, 789-96 (7th Cir. 2014)). The plaintiff must allege "that his injury was caused by a [corporation] policy, custom, or practice of deliberate indifference . . . or a series of bad acts that together raise the inference of such a policy." Shields, 746 F.3d at 796 (citing Woodward v. Corr. Med. Servs. of Ill., Inc., 368 F.3d 917, 927 (7th Cir. 2004)). The question is "whether a municipal (or corporate) policy or custom gave rise to the harm (that is, caused it), or if instead the harm resulted from the acts of the entity's agents." Reck v. Wexford Health Sources, Inc., 27 F.4th 473, 487 (7th Cir. 2022) (citing Glisson v. Ind. Dep't of Corr., 849 F.3d 372, 379 (7th Cir. 2017) (*en banc*)).

The plaintiff has not alleged that Nurse Zerbst or Doctor Brown were deliberately indifferent to his shoulder injury and the related pain because of a Wellpath policy or custom. He alleges that those individual defendants, by their own actions or inaction, committed medical malpractice or were deliberately indifferent to his injury and his pain. These allegations do not state a claim against Wellpath. The court will dismiss the official capacity claims against Zerbst and Brown.

Like a private corporation, a local government, such as a municipality or county, "cannot be held liable *solely* because it employs a tortfeasor." Monell,

436 U.S. at 691 (emphasis in original). A municipality may "be held liable under § 1983 only for its own violations of federal law." <u>Los Angeles Cty. v. Humphries</u>, 562 U.S. 29, 36 (2010) (citing <u>Monell</u>, 436 U.S. at 694). To demonstrate municipal liability, a plaintiff "must demonstrate that there was an 'official policy, widespread custom, or action by an official with policy-making authority [that] was the "moving force" behind his constitutional injury.'" <u>Estate of Perry v. Wenzel</u>, 872 F.3d 439, 461 (7th Cir. 2017) (quoting <u>Daniel v. Cook Cty.</u>, 833 F.3d 728, 734 (7th Cir. 2016)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 138 (1988) (quoting <u>Pembaur v. Cincinnati</u>, 475 U.S. 469, 479–80 (1986) (emphasis in original)).

The plaintiff has not alleged that he suffered from inadequate medical treatment because of an unconstitutional policy or custom of Waukesha County. He has not alleged that Matthews ever saw or treated him. He alleges that defendants Gabor, Lewandowski and Wollenhaupt violated his rights by dismissing his administrative grievances as unfounded—again, claims of individual actions, not actions taken as a result of an unconstitutional policy or custom. These allegations do not state a claim against Waukesha County. The court will dismiss the official capacity claims against defendants Matthews, Gabor, Lewandowski and Wollenhaupt.

The plaintiff has not sued Waukesha County. He has alleged, however, that Waukesha County Jail—which is an arm of the county—has a policy requiring federal inmates to pay a $10 copay for medications and a $25 copay for medical or mental health services. The plaintiff has not alleged that he can't pay these copays. He alleges only that he believes they are too high and compares them to the copays charged by Dodge County Detention Facility. "[T]he imposition of a modest fee for medical services, standing alone, does not violate the Constitution." Poole v. Isaacs, 703 F.3d 1024, 1026–27 (7th Cir. 2012); see Conley v. Anglin, 513 F. App'x 598, 602 (7th Cir. 2013) ("It is not deliberate indifference for prison medical professionals to insist that a prisoner pay the required co-payment before receiving care when he has the ability to pay."). Even if the plaintiff had sued Waukesha County, he has not stated a claim that the copays charged at Waukesha County Jail constitute a pattern or practice of *constitutional* violations.

### 2. *Individual Capacity*

The plaintiff alleges that the defendants failed to provide adequate medical treatment for his shoulder injury and the resulting pain. These allegations can constitute a claim under either the Eighth or Fourteenth Amendment, depending on whether the plaintiff was a pretrial detainee or a convicted person at the time of the events he describes. The plaintiff asserts that his clams arise under both the Eighth *and* Fourteenth Amendments, but that is incorrect. Only if the plaintiff was a convicted and sentenced prisoner at the time of the alleged incidents would it be appropriate for the court to review

his allegations regarding the denial of proper medical care under the Eighth Amendment. Gabb v. Wexford Health Sources, Inc., 945 F.3d 1027, 1033 (7th Cir. 2019). If he was pretrial detainee who had not yet been convicted, his claims arise under the Fourteenth Amendment.

The plaintiff does not state whether he was a pretrial detainee or a convicted person, but because this court presided over his federal criminal case (during which he was detained at Milwaukee County Jail, Dodge County Detention Facility and Waukesha County Jail because there is no federal pretrial holding facility in Wisconsin), the court is aware that he was a pretrial detainee from 2018 through January 2022.[3] That means that his claim of inadequate medical care arises under the Fourteenth Amendment. See Miranda v. County of Lake, 900 F.3d 335, 352 (7th Cir. 2018). Under the Fourteenth Amendment, the plaintiff must show only that the medical care he received was objectively unreasonable; he is not required to show that any defendant was subjectively aware that the medical treatment was unreasonable. Id. (citing Kingsley v. Hendrickson, 576 U.S. 389 (2015)).

The complaint states a claim for inadequate medical treatment. The plaintiff alleges that he repeatedly complained of a problem with his shoulder and of shoulder pain, but that he was given only Tylenol, ibuprofen and stretching exercises. The plaintiff alleges that he took his medication and performed the exercises but that these did not correct whatever was wrong with his shoulder or relieve the pain. He says he told Zerbst and Brown more than

---

[3]United States v. Jack A. Clayborne, Case No. 18-cr-108-pp (E.D. Wis.).

once about his persistent pain, but that they either declined or refused to try other treatments and merely told him there was nothing else they could do. Although it is not necessarily deliberate indifference when a medical professional is unable to resolve an incarcerated person's medical issue or relieve the person's pain, it *may* constitute deliberate indifference if the medical professional "doggedly persist[s] in a course of treatment known to be ineffective." Greeno v. Daley, 414 F.3d 645, 655 (7th Cir. 2005). That is what the plaintiff alleges these defendants did. The complaint sufficiently alleges that the plaintiff was suffering from an objectively serious medical issue (some mechanical problem with his shoulder that caused him pain and discomfort), that Zerbst and Brown were aware of it and that they failed to provide adequate medical treatment. The plaintiff may proceed on his claim of deliberate indifference against Nurse Zerbst and Doctor Brown.

The plaintiff also alleges that Zerbst and Brown failed to provide any treatment for his excessively dry skin, which he alleges was "changing colors." Dkt. No. 1 at 10. The plaintiff alleges that Zerbst and Brown told him that they did not treat dry skin and could not do anything about it. The plaintiff does not allege whether he experienced any symptoms from his dry sky, such as his skin peeling, cracking or breaking. Nor does he allege that he suffered any harm from his dry skin, such as pain, soreness or bleeding. Without any detail about his dry skin, the plaintiff's allegations do not satisfy the objective component of an Eighth Amendment deliberate indifference claim. Nor do his sparse allegations allow the court to conclude that Zerbst and Brown acted

objectively unreasonably under the Fourteenth Amendment by declining to provide treatment for the plaintiff's dry skin. As alleged, the plaintiff's allegations about his dry skin do not state a claim for relief under the Fourteenth Amendment. See Conner v. Waterman, 794 F. App'x 527, 529 (7th Cir. 2020) (citing Conner v. Hoem, 768 F. App'x 560 (7th Cir. 2019)) (holding that inmate's assertion about "the short-term absence of a cream that might alleviate dry and cracking skin does not present a plausible constitutional claim" and "is frivolous").

The plaintiff seeks to proceed against Wellpath, which he alleges employs Zerbst and Brown. Wellpath is not a "person" that may be sued under §1983. It is a private business or corporation. As noted, the plaintiff may proceed against Wellpath only if he alleges that Zerbst and Brown were acting according to a policy or custom of Wellpath when they inadequately treated his shoulder pain. See Shields, 746 F.3d at 796. The plaintiff has not alleged a custom or policy that led to his inadequate treatment, so he has not stated a claim against Wellpath. He may not proceed against Wellpath in any capacity, and the court will dismiss Wellpath from this lawsuit.

The plaintiff seeks to proceed against Zerbst and Brown on a claim of medical malpractice. Medical malpractice does not violate the Constitution. See Estelle, 429 U.S. at 106; Brown v. Peters, 940 F.3d 932, 937 (7th Cir. 2019). But a plaintiff may raise a claim of medical malpractice under state law. Because the facts underlying the plaintiff's medical malpractice claim are the same as those underlying his deliberate indifference claim, the court will

15

exercise supplemental jurisdiction over the plaintiff's state law medical malpractice claim against Zerbst and Brown. See 28 U.S.C. §1367(a).

The plaintiff asserts that defendants Gabor, Lewandowski and Wollenhaupt were deliberately indifferent to his medical needs. Although these defendants are not medical professionals and were not responsible for providing medical treatment, the plaintiff asserts that they attempted to cover up the fact that he received inadequate medical treatment by dismissing his administrative complaints about that treatment. The plaintiff has not alleged any facts that support his claim that these defendants attempted to cover up anything. He alleges only that when he filed grievances, these defendants denied them. That is part of a complaint examiner's job.

> One can imagine a complaint examiner doing her appointed tasks with deliberate indifference to the risks imposed on prisoners. If, for example, a complaint examiner routinely sent each grievance to the shredder without reading it, that might be a ground of liability. *See Greeno v. Daley*, 414 F.3d 645, 655-56 (7th Cir. 2005); *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996). Or a complaint examiner who intervened to prevent the medical unit from delivering needed care might be thought liable. *See Hernandez v. Keane*, 341 F.3d 137 (2d Cir. 2003); *Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004).

Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009). But

> [r]uling against a prisoner on an administrative complaint does not cause or contribute to [a constitutional] violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not.

George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007). Without more, a complaint examiner who denies a grievance, or rejects an appeal from a denied grievance, is not deliberately indifferent.

The plaintiff implies that when the complaint examiners learned of his allegations that he was not receiving adequate medical care, they had a duty to do something about it. That is not the case; "[p]ublic officials do not have a free-floating obligation to put things to rights . . . ." Burks, 555 F.3d at 595. "Section 1983 establishes a species of tort liability, and one distinctive feature of this nation's tort law is that there is no general duty of rescue." Id. at 596 (citing DeShaney v. Winnebago Cty. Dep't of Social Services, 489 U.S. 189 (1999)). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." Id. at 596.

Defendants Gabor, Lewandowski and Wollenhaupt did not violate the plaintiff's rights by denying his grievances about his allegedly inadequate medical treatment. The court will dismiss these defendants from this lawsuit.

The plaintiff has not alleged that Matthews provided him with medical treatment; he doesn't allege that Matthews did *anything* to violate his rights. The petitioner first mentions Matthews when he says that he exhausted his remedies regarding his claim that Zerbst and Brown did not treat his shoulder injury, saying that the complaint examiners "supported and endorsed" the deliberate indifference and acts committed by "the Health Services Administrator James Matthews." Dkt. No. 1 at 10. But the complaint does not describe any deliberate indifference or acts committed by Matthews. He said the same thing about exhausting his remedies regarding Zerbst and Brown's refusal to give him anything for his dry skin; he said that the complaint examiners "supported and endorsed" the deliberate indifference and acts

committed by "the Health Services Administrator James Matthews." Id. at 12. He said that he exhausted his remedies regarding being charged $10 for over-the-counter medication, and said that the complaint examiners "support[ed] and endorse[d] the acts committed by the Health Services Administrator James Matthews," without describing what acts Matthews committed. Id. at 12-13. Nowhere in the complaint has the plaintiff described anything that Matthews personally did to violate his rights.

The court suspects that the plaintiff sued Matthews solely because Matthews is the administrator of the Health Services Unit. But for a supervisor to be held liable for constitutional violations under §1983, the plaintiff cannot rely on a theory of "respondeat superior" (the legal doctrine that says that an employer is responsible for the acts of its employees performed during the course of the employee's performance); the plaintiff must demonstrate "that the [defendant] violated the Constitution through [his] own conduct." Stockton, 44 F.4th at 619 (citing Perez v. Fenoglio, 792 F.3d 768, 781 (7th Cir. 2015)). The plaintiff must state facts showing that Matthews either was personally involved in any of the constitutional violations he alleges or "facilitated, approved, or turned a blind eye" to the constitutional violations he alleges. Id. The plaintiff has made no such allegations. The court will dismiss Matthews as a defendant.

Finally, the plaintiff seeks declaratory relief, injunctive relief and damages. But he is no longer incarcerated at Waukesha County Jail and is no longer receiving allegedly inadequate medical treatment from Zerbst and Brown. Because the plaintiff no longer is at Waukesha County Jail, and

because he has not alleged that it is likely that he will return there in the future, "a declaratory judgment would not affect [the defendants'] behavior towards [him]." Pearson v. Welborn, 471 F.3d 732, 743 (7th Cir. 2006) (citing City of Los Angeles v. Lyons, 461 U.S. 95, 103–04 (1983); Davis v. District of Columbia, 158 F.3d 1342, 1348 (D.C. Cir. 1998)). The plaintiff's request for declaratory relief is moot. See Bigbee v. Nalley, 482 F. Supp. 2d 1092, 1099 (W.D. Wis. 2007) (citing Robinson v. City of Chi., 868 F.2d 959, 966 n.5 (7th Cir. 1989), and Higgason v. Farley, 83 F.3d 807, 811 (7th Cir. 1996)).

For the same reasons, the plaintiff's requests for injunctive relief (including a temporary or permanent restraining order) are moot. See Maddox v. Love, 655 F.3d 709, 716 (7th Cir. 2011) (concluding that prayer for injunctive relief was moot because plaintiff was transferred to a different facility and failed to allege "a realistic possibility that he will again be incarcerated in the same state facility and therefore be subject to the actions of which he complains"); Ortiz v. Downey, 561 F.3d 664, 668 (7th Cir. 2009) (same). This suit will proceed only against Zerbst and Brown in their individual capacities and only for damages.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 3.

The court **DENIES AS MOOT** the plaintiff's motion for an extension of time to pay the initial partial filing fee. Dkt. No. 13.

19

The court **DISMISSES** James Matthews, Wellpath Medical Provider, Captain Gabor, Deputy Jail Administrator Lewandowski and Jail Administrator Wollenhaupt.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the complaint and this order on defendants Nurse Zerbst and Doctor Brown at the Waukesha County Jail under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** defendants Zerbst and Brown to file a responsive pleading to the complaint.

The court **ORDERS** that the agency that has custody of the plaintiff shall collect from his institution trust account the **$331.53** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number.

20

If the plaintiff transfers to another county, state or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden as U.S. Penitentiary McCreary.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and completing dispositive motions.

The court **ORDERS** that the plaintiff must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court

advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 13th day of October, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**